UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERTO APONTE,

                    Petitioner,

vs.                                Case No.  2:06-cv-462-FtM-29DNF

SECRETARY, DOC,
                    Respondent.
_____

## OPINION AND ORDER

### I. Status

Petitioner Roberto Aponte (hereinafter "Petitioner" or "Aponte") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on September 6, 2006.[1] Petitioner challenges his conviction entered in the Twentieth Judicial Circuit Court, Lee County, Florida. Petition at 1. Respondent filed a Response (Doc. #12, Response) and supporting exhibits (Docs. #15, #16), including Petitioner's postconviction motions and hearing transcripts. Petitioner filed a Reply (Doc. #14, Reply). This matter is ripe for review.

### II.  Procedural History

Petitioner was charged by a second amended information of six counts: (count one) car jacking with a deadly weapon; (count two)

_____

[1]The Petition (Doc. #1) was docketed and filed with the Court on September 8, 2006; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

kidnaping; (count three) aggravated battery with a deadly weapon or causing harm; (counts four and five) lewd and lascivious exhibition; and (count six) lewd and lascivious molestation. Exh. 1. Petitioner filed a motion to sever counts four through six, which the trial court granted. See Exh. 7 (setting forth procedural and factual narrative of case on direct appeal). Petitioner's jury trial commenced on December 10, 2002; he was found guilty of carjacking with a deadly weapon; kidnaping; and aggravated battery with a deadly weapon or causing harm (counts one-three). Exh. 4. Following trial, defense counsel filed a motion for mistrial based on an incident involving a juror. On March 18, 2003, the court denied the motion for mistrial. Exh. 5. Petitioner was sentenced as a prison releasee reoffender to life in prison on the car jacking and kidnaping counts, and a fifteen-year sentence on the aggravated battery count. Exh. 6.

Petitioner filed a direct appeal, Exh. 7; a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, Exh. 9; and supplemental motion for postconviction relief, Exh. 10, and appeal thereof; and was denied all relief by the State courts.

Petitioner then initiated the federal petition *sub judice* raising the following four grounds:

(1) A conviction pursuant to [an] insufficient amount of evidence is a miscarriage of justice;

(2) Defense counsel rendered ineffective assistance by failing to investigate information provided by Petitioner two months prior to trial;

(3) Defense counsel rendered ineffective assistance by failing to move to suppress evidence illegally obtained, and;

(4) Defense counsel rendered ineffective assistance by failing to move for a mistrial when one of the juror's found papers pertaining to Petitioner's case.

Petition at 5-11.

### III. Applicable § 2254 Law

Post-AEDPA law governs this action. Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). The AEDPA imposes a one-year statute of limitations on § 2254 actions. 28 U.S.C. § 2244(d). Respondent concedes that the Petition is timely, Response at 8, and the Court agrees.

#### A. Exhaustion

If a ground asserted by a petitioner warrants review by a federal court under § 2254, the petitioner must have first afforded the state courts an initial opportunity to address any federal issues. 28 U.S.C. § 2254(b)(1)(A). This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts. Rhines v. Weber, 544 U.S. 269, 274 (2005). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."

O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)("exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'").

A petitioner must present the same claim to the state court that he now requests the federal court to consider. McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)(citations omitted); Kelly v. Sec'y for the Dep't of Corr., 377 F. 3d 1317, 1343-44 (11th Cir. 2004). Thus, the exhaustion requirement is not satisfied if the claims raised before the state court were not raised in terms of federal law. Gray v. Netherland, 518 U.S. 152, 162-63 (1996); Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007). With regard to claims of ineffectiveness of trial counsel, a petitioner must have presented those claims to the state court "'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" Ogle v. Johnson, 488 F. 3d 1364, 1368 (11th Cir. 2007)(citing McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).

If a petitioner fails to exhaust a claim, the court may dismiss the petition without prejudice to permit exhaustion, if appropriate. <u>Pliler v. Ford</u>, 542 U.S. 225, 227 (2004); <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982). Alternatively, the court has the discretion to grant "a stay and abeyance to allow the petitioner to exhaust the unexhausted claim." <u>Ogle</u>, 488 F.3d at 1370 (citations omitted). However, "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the courts] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." <u>Snowden</u>, 135 F.3d at 736 (citations omitted).

**B. Procedural Default**

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." <u>Henderson</u>, 353 F.3d at 891 (quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)). A procedural default may also result from non-compliance with state procedural requirements. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30, <u>reh'g</u> <u>denied</u>, 501 U.S. 1277 (1991).

> Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to

> comply with an independent and adequate state
> procedural rule. <u>Wainwright v. Sykes</u>, 433
> U.S. 72, 85-86, 97 S. Ct. 2497, 53 L. Ed. 2d
> 594 (1977). When a state court correctly
> applies a procedural default principle of
> state law, federal courts must abide by the
> state court decision, <u>Harmon v. Barton</u>, 894
> F.2d 1268, 1270 (11th Cir. 1990), but only if
> the state procedural rule is regularly
> followed, <u>Ford v. Georgia</u>, 498 U.S. 411, 424,
> 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991). . .

<u>Siebert v. Allen</u>, 455 F.3d 1269, 1271 (11th Cir. 2006), <u>cert.</u>
<u>denied</u>, 127 S. Ct. 1823 (2007); <u>see also</u> <u>Baldwin v. Johnson</u>, 152
F.3d 1304, 1317 (11th Cir. 1998) (finding that federal courts may
not review a claim that a petitioner procedurally defaulted under
state law if the last state court to review the claim states
clearly and expressly that its judgment rests on a procedural bar,
and the bar presents an independent and adequate state ground for
denying relief), <u>cert. denied</u>, 526 U.S. 1047 (1999). This is true
where the appellate court silently affirms the lower court
procedural bar since federal courts should not presume an appellate
state court would ignore its own procedural rules in summarily
denying applications for postconviction relief. <u>Tower v. Phillips</u>,
7 F.3d 206, 211 (11th Cir. 1993).

A procedural default for failing to exhaust state court
remedies will only be excused in two narrow circumstances. First,
a petitioner may obtain federal habeas review of a procedurally
defaulted claim if he shows both "cause" for the default and actual
"prejudice" resulting from the asserted error. <u>House v. Bell</u>, 547
U.S. 518, 536-37 (2006); <u>Mize</u>, 532 F.3d at 1190. "Cause"

ordinarily requires a petitioner to demonstrate "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (quoting Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999)). Constitutionally ineffective assistance of counsel can constitute cause if that claim is not itself procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). To show "prejudice," a petitioner must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different." Henderson, 353 F.3d at 892.

Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House, 547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson, 353 F.3d at 892. See also House, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that, "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt") (citation omitted).

## C.  Deference to State Court Decision

A federal court may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

Where a petitioner's claim raises a federal question that was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson, 527 F.3d at 1146; Wright v. Sec. Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002). See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law." Wright v. Van Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially

indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. <u>Brown</u>, 544 U.S. at 141; <u>Mitchell</u>, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown</u>, 544 U.S. at 134; <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-77 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review <i>de novo</i>; rather, §

2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. Id. at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. Rice v. Collins, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed de novo. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

**D. Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). <u>Newland v. Hall</u>, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. <u>Newland</u>, 527 F.3d at 1184. In <u>Strickland</u>, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688. Petitioner bears a heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006), <u>cert. denied</u> <u>sub</u> <u>nom.</u> <u>Jones v.</u>

_Allen_, 127 S. Ct. 619 (2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," _Roe v. Flores-Ortega_, 528 U.S. 470, 477 (2000) (quoting _Strickland_, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. _Id._  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." _Strickland_, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue. _Ladd v. Jones_, 864 F.2d 108, 109-10 (11th Cir.), _cert. denied sub nom. Ladd v. Burton_, 493 U.S. 842 (1989); _United States v. Winfield_, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" _Chandler v. United States_, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting _Burger v. Kemp_, 483 U.S. 776, 794 (1987)).

## IV. Analysis

This Court has carefully reviewed the record and concludes no evidentiary proceedings are required in this Court.  _Schriro v. Landrigan_, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, _Chandler v. McDonough_, 471 F.3d 1360 (11th

Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

**A.  Ground One:  Sufficiency of the Evidence**

In ground one, Petitioner argues that there was insufficient evidence to sustain his convictions of carjacking and kidnaping. Petition at 5.  Petitioner claims that the jury found him guilty without a substantial amount of the evidence, thereby violating his rights to due process.  Id. at 6.  Because a reasonable doubt existed, Petitioner avers that the conviction constitutes "fundamental error and must be set aside." Id.  Specifically, Petitioner argues:

> A conviction based upon circumstantial evidence
> constitutes a fundamental miscarriage of justice, which
> is a violation of Due Process.  In the Petitioner's case,
> the alleged victim was unable to identify Petitioner as
> being the assailant, nor could she positively state that
> her attacker had a weapon.  The only evidence presented
> during trial[] to link Petitioner to the car were the car
> keys, which were discovered on Petitioner.

Id. at 5-6.

Respondent submits that ground one is procedurally defaulted because Petitioner did not raise the federal constitutional dimension of this ground in a timely manner at trial and then on direct appeal.  Response at 11.  Respondent notes that on direct appeal Petitioner raised a claim of trial court error based on the trial court's denial of his motion for judgment of acquittal.

-14-

Response at 10.  However, raising this issue only under State law in the State courts was insufficient to exhaust a federal question concerning the denial of his acquittal motion.  Id. Respondent, alternatively, argues that, although Petitioner's claim is couched as a due process issue, ground one presents only a State law issue for which federal habeas corpus relief does not lie.  Id. (citing Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974)(noting that under Florida law, the court should only grant a motion for judgment of acquittal when the evidence is such that no view that the jury may lawfully take of the evidence is favorable to the opposing party). See also Estelle v. McGuire, 502 U.S. 62, 68 (1991)(stating that when a matter of state law is at issue in a federal habeas, the court may only determine whether a violation of federal law has occurred)).

The record reflects that Petitioner, through appointed counsel, argued on direct appeal that the trial court erred by denying his motion for judgment of acquittal because the State had presented insufficient evidence.  Exh. 7 at 18-29.  However, the brief only cited State law and did not alert the State court of any federal constitutional issues.  Id. The appellate court per curiam affirmed the trial court.  Exh. 8.  Petitioner later attempted to raise a sufficiency of the evidence claim in his Rule 3.850 motion and supplemental Rule 3.850 motion, which the postconviction court denied, recognizing that those issues "must be raised on direct appeal of the conviction, not on postconviction relief."  See Exh.

10 (setting forth insufficiency of the evidence claim in the Rule 3.850 motion); Exh. 13 (denying Petitioner's claim for relief as improperly raised in his postconviction motion).

Because Petitioner did not raise the federal dimension of this ground on direct appeal and improperly raised the claim in his Rule 3.850 motion, Petitioner did not properly exhaust the claim and it is now procedurally defaulted under Florida law. Philmore v. McNeil, ____ F.3d ____, 2009 WL 2181682 *12 (11th Cir. July 23, 2009). Petitioner does not overcome the procedural default by showing cause, prejudice, or fundamental miscarriage of justice. Thus, the Court dismisses Petitioner's ground one as procedurally defaulted.

In the alternative, Petitioner is also denied relief on the merits of ground one. In Jackson v. Virginia, the United States Supreme Court held that, when reviewing the sufficiency of the evidence, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. 307, 318-319 (1979) (emphasis in original). It was within the province of the jury to weigh the credibility of all of the witnesses' testimony. Id. at 318-319. As correctly summarized by Respondent, the record contains, *inter alia*, the following facts:

> [T]he victim, Zora Benner, testified that on September
> 14, 2000, while she started to leave the Publix

Supermarket at 4901 Palm Beach Boulevard in Ft. Myers, she was attacked by a man who opened her car door and thrust himself into her vehicle. This person pushed Benner aside on to the console and started hitting [her] in the head while asking [her] for the car keys in broken English that sounded Hispanic. Part of Benner's body was still on the driver's seat, and her legs and feet were underneath the assailant's. Benner refused to hand the attacker her keys until the assailant held a knife to Benner's throat. At that point, Benner threw her keys and the knife disappeared. Benner testified she sort of saw the knife and felt it sharp. In her struggle, Benner got cut on her arm by the knife.

After Benner threw her keys, the attacker continued to hold her down with his elbow as he started up the car. During this time, Benner was kicking the attacker's feet and attempted to open the passenger door. The attacker told Benner to be quite as he drove Benner's car on 80 going West. Eventually, the attacker slowed the car down enough to push Benner out. Benner then got back on her feet and sought help at the Publix Supermarket. . . . When police arrived, Benner was not able to provide them with a description of her attacker's face, instead only an approximate description of the attacker's weight and height. Benner, however, was able to provide police with a description of her Mercury Topaz along with the vehicle tag and VIN number.

Police put a BOLO out on the suspect and a description of Benner's vehicle soon after the incident. Lee County officials further advised the suspect was heading towards [Aponte's] sister's house in Tarpon Springs. That afternoon, Tarpon Springs Officer Clyde Thorton received the dispatch regarding the instant offense. . . .

When . . . officers arrived at the apartment the suspect was believed to be at, they knocked on the door and were greeted by Petitioner. The Officers were in full police uniform at the time. Officer Barcelo was fluent in Spanish so he started speaking with Petitioner. The officer asked Petitioner to step out of the apartment but Petitioner replied, "No." At that point, Petitioner reached into his overalls and started pulling out two knives in an aggressive fashion. In response, Officer Barcelo pushed Petitioner down in the doorway and knocked the knives out of Petitioner's hand. Petitioner was secured with handcuffs. . . . . Thereafter, Petitioner

was placed under arrest and the knives safeguarded for evidence.

As the Petitioner was searched incident to the arrest, Officer Thorton found a set of car keys in Petitioner's left pants pocket. The keys appeared to be Ford or Mercury keys. At that point, the officers placed Petitioner into a police vehicle and read Petitioner his <u>Miranda</u> rights. After the Petitioner acknowledged his rights, police asked Petitioner where was the victim's vehicle. Petitioner responded the vehicle was in the K-Mart parking lot only a block away. . . . .

At the police station, Petitioner was again advised of his <u>Miranda</u> rights. As before, Petitioner acknowledged that he understood his rights both verbally and by signing a wavier form. Police then questioned Petitioner regarding the details of the instant offense. Petitioner informed police that he had observed a lady sitting next to a vehicle in the parking lot of a shopping center in Ft. Myers. Petitioner stated that he held a small knife up to her neck, hit the lady in the head with his fist, and took her with him in the car. Petitioner further explained he went a few miles and then told her to get out of the car.

During Petitioner's confession, police had a Xerox copy of both knives found on Petitioner's person when arrested. Petitioner pointed to the knife he used and demonstrated how he put the knife to the lady's throat. Police then asked where the car was currently located and Petitioner told them it was at the K-Mart near his sister's apartment. Petitioner then made a similar statement in writing. The next day, Petitioner provided police with a second statement. This statement mirrored Petitioner's confession he made the previous day.

Response at 15-17 (internal citations omitted).

Based on a review of the record and the facts submitted to the jury, a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. The evidence presented to the jury included testimony from the victim, testimony from the arresting officers, and Petitioner's own confessions.

Although the victim was unable to specifically identify Petitioner, the victim was able to describe the assailant and Petitioner matched that description. Following the incident, the victim went to the hospital to receive stitches for the cut on her arm. When police first arrested Petitioner in Tarpon Springs at his sister's house, the keys to the victim's vehicle were found in Petitioner's pocket. Based on the record, Petitioner is denied relief on ground one.

**B. Ineffective Assistance of Trial Counsel Claims**

In grounds two, three, and four, Petitioner argues that defense counsel rendered ineffective assistance, thereby violating his Sixth Amendment rights under the United States Constitution. See Petition at 7-16.

**(1) Ground Two:**

Petitioner argues that defense counsel failed to investigate "information provided by Petitioner two (2) months prior to trial." Petition at 7. Petitioner contends that he told counsel that he "gave a false statement to the police, in order to protect his brother." Id. Additionally, Petitioner claims that at the time of the incident, he was at home, arguing with his wife. Id. at 7-8. Thus, Petitioner argues that had defense counsel talked to his wife and brother, counsel would have learned of these "strong alibi witness[es]." Id. at 8.

In Response, Respondent argues that this ground is unexhausted and now procedurally barred. Response at 18. Respondent states that Petitioner raised a similar claim, not the same claim, in ground two of his supplemental Rule 3.850 motion, filed in the postconviction court. Id. (citing Exh. 10). However, Respondent argues that this is the first time Petitioner has raised an ineffective assistance of counsel claim based on the failure to investigate alibi witnesses. Id. Thus, Respondent submits that this ground is unexhausted and now procedurally defaulted under Florida law. Id. In the alternative, Respondent argues that Petitioner is not entitled to relief on this claim because defense counsel's performance did not amount to a Sixth Amendment violation.

The Court agrees that the record establishes Petitioner did not exhaust his claim that counsel rendered ineffective assistance by failing to investigate his wife and brother as potential alibi witnesses. See generally Exhs. 9-12. Petitioner did not raise the same claim in the State court as the claim he raises *sub judice*. See McNair, 416 F.3d at 1302. Thus, it is clear the claim is unexhausted and now procedurally defaulted under Florida law. As such, ground two is dismissed as procedurally defaulted.

Turning in the alternative to the merits of ground two, the issue raised before the State court that is similar to the instant claim is ground two in Petitioner's supplemental Rule 3.850 motion. Exh. 10 at 7. In that postconviction motion, Petitioner argued:

Trial counsel failed to advised [sic] and to discuss available defenses as to count 1[] and two of the indictment/information [sic] had counsel done so, Defendant could have contested [] the State's only evidence (speculations).

Trial counsel's failure to advised [sic] and discuss available defense as to Count 1, 2, of the Indictment and Information, and even investigate, or consult with Defendant [sic] a proper defense, constituted ineffectiveness [] of trial counsel, and in doing so denied the defendant the ample opportunity to meet the State's case, and the right to adequate legal representation guaranteed by the Sixth and Fourteenth Amendment of the United States Constitution, [sic] and the right to a fair trial [sic].

Exh. 10 at 7. In response, the State argued:

The defendant claims that his attorney failed to advise or discuss with him available defenses to Counts One and Two of the information and that, because of counsel's failure, he was denied the opportunity to contest the State's only evidence. (Defendant's Amended Post-Conviction Motion, page 7) First, however, the defendant's conclusory allegations are insufficient to meet the burden for an evidentiary hearing. *See Freeman v. State,* 761 So.2d 1055, 1061 (Fla. 2000). The defendant does not allege that counsel failed to present an adequate defense at trial or that better advice or discussions by counsel would have procured a more favorable result for the defendant. Without a more specific allegation of deficient performance and prejudice, the defendant is not entitled to an evidentiary hearing or post-conviction relief on this ground.

Furthermore, defendant's allegation is conclusively refuted by the record. During a pre-trial hearing regarding statements made by the defendant, counsel described the defense theory and explained that the theory was based on conversations with the defendant himself:

> [T]he theory of our defense is that my client admitted to his involvement in this matter to protect his brother, who was the actual assailant. That's his story regarding why he made admissions . . .

He's going to testify in his case in chief that he was trying to leave the area. Now, I'm going to have trouble getting into that, but essentially if it was an open-ended thing, here is what we're trying to lay out: He was being accused by his wife of a sexual assault and wanted to get out of there, and wanted to talk to his sister about that, hopefully getting his s sister to talk to his wife down here and say, "Hey, look, this is wrong. You should not be doing this."

He did not have access to a vehicle. He called his brother. His brother had just been arrested and released for a knife assault on another person. My client knew that. My client also knew that his brother had an active VOP warrant out for him. He called his brother knowing that his brother needed to get out of town, and he says, "I need to get out of town, too."

In an effort to get out of Ft. Myers, my client advised his brother, "Get your truck and let's go up to Tampa so that I can talk to my sister and get my wife off my back down here . . ." After my client called his brother, his brother shows up, and it's his position, shows up in Mrs. Brenner's car. My client asks his brother, "Where did this car come from? Whose car is this?" And essentially, not immediately, but within a matter of minutes, my client found out that his brother had in fact stolen this car to perfect his own escape, and in the meantime was going to use the car to allow my client to go up to Tampa with him.

When they got to Tampa, my client took the position that, after his brother took off up there, and it became apparent that the police were going to come over and arrest him for the matter, that he would cooperate. He would give a statement, he would show them where the car was. Because he's been through the system before, and based upon what his brother told him about the incident, his brother had laid out a relatively de minimus sort of grand

theft auto, with a battery. That's what he
thought he was going to be confessing to.

At some point, before he gave his statement,
his brother told him that he had had a knife,
but did not stab the lady with it. Or, if the
lady was stabbed, it was accidental. Again,
my client's been through the system two or
three times, he's thinking, "I'm going to have
to take a hit on the grand theft auto, maybe
an assault charge with a knife. My brother is
looking at life in prison on these violations
of parole. I'm the older brother, I'll take
the hit." Only when he gets back to jail
here, reads the discovery, finds out what he's
charged with and realized that he now is
looking at life, is he prepared to
essentially, reluctantly, give up his brother
as the person who he believes did this crime.

I don't have any problem with a statement made
by the defendant regarding his involvement in
the robbery but, you know, I'm trying to
structure a defense here, and I'm doing the
very best I can under the circumstances based
on what my client told me 24 hours before
trial. So I don't need extraneous
incriminating, undocumented stuff.

(State's Exhibit C, Vol I, page 11) It is very clear
from counsel's comments that he and the defendant had
discussed the intended defense prior to trial.
Additionally, the defendant's own trial testimony tracked
counsel's description of the defense. The defendant
testified that it was his brother who stole Mrs. Benner's
car, that the two drove to Tampa together, and that he
confessed to the crime to protect his younger brother.
(State's Exhibit C, Vol. II, page 244-263) The fact that
the defense was not successful does not mean that
counsel's performance was deficient. *See Sireci v.
State*, 469 So.2d 119, 120 (Fla. 1985)("[W]hether trial
strategy is successful or unsuccessful is not the
standard by which counsels' performance must be
measured"). To the contrary, the record indicates that
counsel adequately prepared a defense to the charges,
discussed that defense with the defendant, and presented
evidence to support the defense theory. Absent a showing
of deficient performance and prejudice, the defendant is

> not entitled to an evidentiary haring and cannot obtain
> post-conviction relief on this claim.

Exh. 12; see also Exh. 2, vol. II at 223-226. The postconviction
court summarily denied Petitioner relief on this claim by
incorporating the State's response in its order, citing to
Strickland. Exh. 13. The appellate court *per curiam* affirmed the
postconviction court's order. Exh. 14.

The Court finds that the State courts decisions were neither
contrary to, nor an unreasonable application of, clearly
established federal law. The State courts decisions were also not
an unreasonable application of the facts in light of the evidence.
The court identified Strickland as the guiding legal precedent and
found defense counsel's actions were not deficient because counsel
presented the theory of the defense that Petitioner told counsel,
albeit only 24 hours prior to trial. Further, the court found that
Petitioner had not established that he was prejudiced by counsel's
actions. The record supports the State courts' rulings and belies
Petitioner's contentions. Petitioner himself testified during his
trial that it was his brother who stole the victim's car. Exh. 2,
vol II at 470. The jury weighed the testimony and found Petitioner
guilty. Petitioner has not satisfied either prong under
Strickland. Based on the foregoing, Petitioner is denied relief on
ground two.

**(2) Ground Three:**

Petitioner argues that defense counsel rendered ineffective assistance by not filing a motion to suppress the car keys that law enforcement found in Petitioner's pocket because law enforcement failed to advise Petitioner of his <u>Miranda</u> rights. Petition at 10. Specifically, Petitioner contends that he was not given a <u>Miranda</u> waiver form to sign; and, as such, he did not fully understand his rights. <u>Id.</u> Petitioner submits that had he been given the <u>Miranda</u> form to sign, he would have read it and not have signed it. <u>Id.</u> Petitioner faults defense counsel for not "knowing" that he never signed the form and not moving to suppress the car keys based on this illegal seizure. <u>Id.</u>

Respondent points out that Petitioner raised this claim as ground three in his supplemental Rule 3.850 motion. Response at 20. Respondent refers the Court to the record of the State court proceedings, which shows that Petitioner <u>was</u> advised of his <u>Miranda</u> rights. <u>Id.</u> (citing Exh. 3). Respondent further argues that the Court should deny Petitioner relief on this ground because Petitioner has not established that the State courts' ruling were contrary to, or involved an unreasonable application of, clearly established law, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented. <u>Id.</u>

Petitioner raised this claim of ineffective assistance of counsel in his supplemental Rule 3.850 motion, which the postconviction court summarily denied by incorporating the State's

response.  Exhs. 10-13.  In response to the claim, the State noted the following:

> First, the defendant does not allege that the physical evidence, a set of car keys, was seized *because* of his statements obtained in violation of *Miranda*.  In *State v. C.F.*, 798 So.2d 751 (Fla. 4th DCA 2001), the Fourth District Court of Appeal held that suppression of physical evidence is appropriate where information leading authorities to the evidence was learned in a statement obtained in violation of *Miranda*.  But here, defendant's motion establishes absolutely no connection between the car keys and his statements to police.

> Second, any motion to suppress based on the absence of *Miranda* warnings would have been completely without merit, as the defendant was properly advised of his *Miranda* rights.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106, S. Ct. 2574, 91 L. Ed.2d 305 (1986)("Where defense counsel's failure to litigate a Fourth amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove his Fourth Amendment claim is meritorious).  Prior to his interview with police, the defendant was advised of his right to remain silent, his right to a lawyer, and freedom to invoke those rights. (Sworn Tape Statement of Roberto Rodriquez Aponte, 09/15/00, State's Exhibit H) The exchange was transcribed, and a copy of the transcript was given to the defendant during pre-trial discovery.  Based on that transcript, defense counsel had no grounds upon which to claim that the defendant was not properly *Mirandized*.  Thus, there was no deficient performance on counsel's part and can be no resulting prejudice.

Exh. 13 (emphasis in original).  The appellate court *per curiam* affirmed the postconviction court's order.

The Court finds that the State courts' rulings were neither contrary to, nor an unreasonable application of, clearly established federal law.  The State court recognized Strickland as the correct legal precedent as to ineffective assistance of counsel.  Also, the State court did not make an unreasonable

determination of the facts in light of the evidence. While Petitioner challenges law enforcement officers' purported unlawful seizure of the car keys, the record shows that law enforcement conducted a search incident to arrest on Petitioner and found the car keys in Petitioner's left, overall pant pocket. Exh. 2, vol II at 258-259. With regard to the <u>Miranda</u> claim, court's look at the "totality of the circumstances" to determine whether a statement is voluntary. <u>Lawhorn v. Allen</u>, 519 F.3d 1272, 1291-92 (11th Cir. 2008). To determine "knowing" and "intelligent" waiver of <u>Miranda</u> rights, the courts focus on the suspects' comprehension of their rights. <u>Blanco v. Singletary</u>, 943 F.2d 1477, 1509-1510 (11th Cir. 1991)(citing <u>Mincey v. Arizona</u>, 437 U.S. 385 (1978)). "'If a defendant cannot understand the nature of his rights, he cannot waive them intelligently.'" <u>Miller v. Dugger</u>, 838 F.2d 1530, 1539 (11th Cir. 1988). Further, although a suspect's signature on a waiver of <u>Miranda</u> rights form is strong evidence, it is not conclusive evidence that the rights were waived. <u>Hart</u>, 323 F.3d at 893 (citing <u>North Carolina v. Butler</u>, 441 U.S. 369 (1979)).

Here, defense counsel's decision not to file a motion to suppress is supported by the record. Specifically, Officers Thornton, Hill, and Barcelo himself testified that Officer Barcelo read Petitioner his <u>Miranda</u> rights in Spanish. Exh. 2, vol. II at 259, 285, 299. The Lee County officers also read Petitioner his <u>Miranda</u> rights and Petitioner acknowledged understanding his rights. Exh. 3. The fact that Petitioner may or may not have

received the <u>Miranda</u> waiver form is not determinative of whether Petitioner knowingly and voluntarily waived his <u>Miranda</u> rights. Moreover, the record belies Petitioner's allegations that he did not receive or sign a <u>Miranda</u> waiver form. The <u>Miranda</u> waiver form, signed by Petitioner, was presented during trial. <u>See</u> Exh. 2, vol. II at 304. And, Petitioner does not challenge the authenticity of the form. <u>See generally</u> Petition. The Court cannot deem defense counsel's performance deficient for failing to file a meritless motion to suppress. <u>Shere v. Sec'y Dep't of Corrections</u>, 537 F.3d 1304, 1311 (11th Cir. 2008). Based on the foregoing, Petitioner is denied relief on ground three.

**(3) Ground Four:**

Petitioner argues that defense counsel rendered ineffective assistance by failing to move for a mistrial when one of the jurors had found and read papers pertaining to the criminal record of Petitioner's brother. Petition at 11; Response at 22. Petitioner also argues that counsel was ineffective by failing to move to disqualify the trial judge for denying Petitioner's motion for mistrial. Petition at 12; Response at 22.

Respondent notes that Petitioner raised this claim in ground four of his supplemental Rule 3.850 motion. Response at 22. Respondent further points out that defense counsel <u>did</u> move for a mistrial when the juror incident was brought to counsel's attention. <u>Id.</u> (emphasis added). The trial court denied the motion for mistrial. Respondent argues that the Court should deny

Petitioner relief on this ground because he has not established that the State courts' denial of this ground for postconviction relief was contrary to, or involved an unreasonable application of clearly established federal law, or that the ruling was an unreasonable determination of facts in light of the evidence. <u>Id.</u> at 23.

Upon review of the record, in ground four of Petitioner's supplemental Rule 3.850, Petitioner argued:

> Trial counsel failed to file [a] motion to disqualify [the] trial judge when it was clear that a juror had found papers pertaining to the Defendant and [sic] court's ruling prejudice[d] [the] Defendant and [sic] in doing so counsel denied the Defendant of adequate legal representation.

Exh. 10 at 9. The postconviction court denied Petitioner relief on this claim by incorporating the State's Response. Exh. 13. The State had responded:

> In Ground Four, the defendant claims that trial counsel was ineffective for failing to request that the trial judge be disqualified. This claim stems from an incident following trial in which a juror disclosed to the Court that he had found in the courthouse hallway several papers pertaining to the criminal record of the defendant's brother. The juror explained to the Court that he recognized the name, Luis Rodriquez, from the previous day's testimony and realized that the papers may have been related to the defendant's case. The juror then put the papers in a magazine he had brought with him but did not disclose the information to any other jurors and did not remove the papers from the magazine while in the jury room. After the trial had concluded, the juror approached the prosecutor, handed him the papers, and explained where he had found them. Defense counsel then moved for a mistrial. (State's Exhibit C, Vol. II, pages 441-447) After two interviews with the juror and extended consideration of the motion, the Court denied the motion for mistrial on March 18, 2003. (Transcript of Interview

with Juror Micheal Hornack, 02/14/03, State's Exhibit I, Order State's Exhibit J)

The defendant now claims that counsel should have moved for disqualification of the trial judge based on the court's denial of his motion for mistrial. But the defendant fails to allege any ground that would even warrant disqualification under F.S.A. § 38.02. Under that statute, a judge may be disqualified because of: (1) interest in the result of the action; (2) relationship by consanguinity or affinity to a party within the third degree; (3) relationship to some person who is interested in the result of the action by consanguinity or affinity within the third degree; (4) relationship to an attorney of record by consanguinity or affinity within the third degree; (5) being a material witness for or against one of the parties; or (6) prejudice. And an adverse ruling itself, whether correct or incorrect, does not constitute the type of prejudice upon which a motion for disqualification may be based. *See Housing Authority of City of Tampa v. Burton*, 873 So.2d 356 (Fla. 2d DCA 2004). Thus, counsel had no rational basis upon which to move for disqualification of the trial judge, after the return of the verdict and finding of guilt, would not have had any impact on the verdict itself. Instead, it would only have prevented the judge from presiding over the defendant's sentencing and motion for new trial. For all of these reasons, this claim is legally insufficient and should be summarily dismissed.

Exh. 12. The appellate court *per curiam* affirmed the court's decision. Exh. 13.

The Court finds that the State courts' decisions were neither contrary to, nor an unreasonable application of, clearly established federal law. Also, the State courts' decisions were not based on an unreasonable determination of the facts in light of the evidence. Although Petitioner challenges his defense counsel's performance based on the failure to file a motion for mistrial, counsel <u>did</u> in fact move for a mistrial. Defense counsel cannot be

deemed to have rendered deficient performance based on the trial court's denial of the motion for mistrial. Indeed, defense counsel moved for a mistrial, but the trial court, after interviewing the juror, denied the motion, finding that "[t]he extraneous documents played no part in any juror's decision, and the evidence of the defendant's guilty [sic] was overwhelming." Exh. 5 (internal citations omitted). The record supports the State courts' rulings. In fact, the papers pertaining to Petitioner's brother, which the juror found, could have helped Petitioner's case considering the papers supported the defense theory of the case that it was Petitioner's brother who committed the crimes. Thus, Petitioner is denied relief on ground four to the extent he submits that defense counsel rendered ineffective assistance for failing to move for mistrial.

Petitioner's argument that defense counsel rendered deficient performance for failing to move to disqualify the trial judge is also baseless. Other than the judge's decision to deny the motion for mistrial, Petitioner has no grounds to support disqualification of the trial judge. See Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983)(explaining that under Florida law a defendant must tender some factual foundation for fear of judge being biased). Thus, as previously stated, the Court cannot find defense counsel's performance deficient for failing to file a meritless motion. See Shere, 537 F.3d at 1311. Based on the foregoing, Petitioner is also denied relief on this part of ground four.

ACCORDINGLY, it is hereby

**ORDERED**:

1.     The Petition for Writ of Habeas Corpus (Doc. #1) is **DISMISSED** as to Ground One, or in the alternative is **DENIED** as to Ground One; and is **DENIED** as to Grounds Two, Three, and Four.

2.     The Clerk of Court shall (1) terminate any pending motions; (2) enter judgment accordingly; and (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___26th___ day of August, 2009.

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record